**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DAVID A. STRAZ, JR. FOUNDATION,

Plaintiff,

v. Case No: 8:25-cv-399-JSM-GDP

CHRISTOPHER STRAZ, individually and as Trustee of the DAVID A. STRAZ, JR. REVOCABLE TRUST OF 1986; and THE NORTHERN TRUST COMPANY, as successor-by merger to NORTHERN TRUST, NA, as Trustee of the DAVID A. STRAZ, JR. REVOCABLE TRUST OF 1986,

Defendants.

---

# ORDER

THIS CAUSE is before the Court upon Plaintiff's and Defendants' Motions for Summary Judgment. The Court, upon review of the motions, responses, replies, record evidence, and being otherwise advised in the premises, concludes that Defendants' motions should be granted, and Plaintiff's motion should be denied because the record is undisputed that Defendants did not breach a fiduciary duty owed to Plaintiff.

## INTRODUCTION

Hindsight is twenty-twenty. The phrase is particularly apt here because, in filing this action, the Foundation focuses on how much more interest $10 million could have made if it had been invested in a money market account instead of a checking account. As Defendants contend, the Foundation cannot evade the plain meaning of the English

language to manufacture a genuine dispute of material fact because it is unhappy with the bargain it made. And, here, it is undisputed that the parties agreed that the subject funds should be invested in "cash."

The Court concludes that the word "cash" is not ambiguous. As such, there is no need to look beyond the plainly obvious and the Court's discussion will be brief since most of the Foundation's arguments improperly rely on matters outside the plain meaning of the agreement.

## UNDISPUTED FACTS

David A. Straz, Jr.—a prominent Tampa businessman—died suddenly on November 18, 2019, leaving an estate with gross assets of $234 million. Before his death, David Straz created the David A. Straz, Jr. Foundation, which is a charitable foundation with $150 million in assets based in Tampa, Florida.

David Straz's estate plan included three components: (a) the Straz Estate; (b) the Straz Revocable Trust; and (c) the Straz Foundation. The Straz Trust was the residuary beneficiary of the Straz Estate, and the Straz Foundation was the residuary beneficiary of the Straz Trust. David Straz's brother, individual Defendant Christopher Straz, was appointed personal representative of the Straz Estate on February 20, 2020. Christopher Straz was also appointed Co-Trustee of the Straz Trust with Defendant Northern Trust.

This dispute arises out of the administration of David A. Straz, Jr.'s Estate and Trust. At base, the Foundation claims Defendants were required to invest the Estate assets in a money market account and that the Defendants breached their fiduciary duties by allowing the Estate assets to be held in a checking account. The Trust is the residuary beneficiary

of the Estate, and the Foundation is the residuary beneficiary of the Trust, so the Foundation's claims relate to its status as a beneficiary of the Trust, not as a beneficiary of the Estate.

By June 2020, approximately $10 million in life insurance and related proceeds were deposited into a Northern Trust checking account under the control of the Personal Representative. The Estate account was opened as a demand deposit account ("DDA" or "checking account") for the David Straz Estate. It is undisputed that the Personal Representative maintained the Estate assets in a conservative position due to multiple, substantial contingencies. For example, Catherine Straz filed a lawsuit in April 2020, against the Estate seeking a declaration that a $40 million fine art collection was not an Estate asset. This art litigation, along with potential IRS tax liabilities, litigation costs, and family disputes, created uncertainty regarding the Estate's total potential liabilities.

On or about August 9, 2021, after extensive negotiations between the parties and their highly experienced counsel, the parties entered the "Third Partial Distribution, Release, and Refunding Agreement," which is the focus of this litigation. Particularly, Section 7, titled "Retention of Cash" stated:

> The [Foundation] acknowledges that the Fiduciaries will retain the remaining assets of the Estate and Trust in cash and will not implement an active investment strategy. The [Foundation] hereby approves the retention of all remaining assets in cash for the duration of the administration of the Trust and waives any requirement that the assets be invested unless otherwise agreed to in writing by the Parties.

It is undisputed that the Foundation also released Defendants from any claims or demands related to any trust accountings in Section 8 of the "Third Partial Distribution, Release, and Refunding Agreement" Additionally, David Straz expressly authorized the

Personal Representative and the Co-Trustees to hold funds uninvested, even if non-productive, so long as they acted in good faith and in reasonable reliance on the Trust and his Last Will and Testament ("Will") provisions. (Trust Art. 21.1; Will Art. 8.1).

After reviewing the parties' extensive arguments at length, the Court concludes, as it touched upon at the onset, that the Foundation's breach of fiduciary duty claim fails as a matter of law. Section 7 of the Agreement expressly authorized retaining the Estate and Trust assets in cash, and the Foundation waived any requirement to invest the assets. The Agreement also resolved and released Defendants from liability arising from distributions, fees, and accountings—the same issues about which the Foundation now complains.

**<u>SUMMARY JUDGMENT STANDARD OF REVIEW</u>**

Motions for summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted); Fed. R. Civ. P. 56(c). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248–49.

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir.1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

Under bedrock Florida law, contract language must be interpreted according to its ordinary meaning. *Prop. Registration Champions, LLC v. Mulberry*, 373 So. 3d 675, 679 (Fla. 5th DCA 2023) (the "text is supreme"). "Where the language of a contract is plain and unambiguous, it controls—full stop." *Id.* Here, Section 7 of the Agreement precludes the Foundation's breach of fiduciary duty claim. Pursuant to Section 7, the Foundation agreed and "acknowledge[d] that the Fiduciaries will retain the remaining

assets of the Estate and Trust in cash and will not implement an active investment strategy." The Foundation further "approve[d] the retention of all remaining assets in cash for the duration of the administration of the Trust and waive[d] any requirement that the assets be invested unless otherwise agreed to in writing by the Parties." This language is clear and unambiguous and therefore requires no further analysis.

The Foundation attempts to rely on parol evidence for an alternative definition of "cash." The Foundation's arguments are unpersuasive because, under Florida law, when contract language is clear and unambiguous, it must be interpreted according to its plain meaning, and parol evidence is inadmissible to vary or contradict the written terms. *See Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 991 (11th Cir. 2012) (citing *Fla. Bar v. Frederick,* 756 So. 2d 79 (Fla. 2000) (stating parol evidence is only admissible where a party seeking to introduce such evidence can establish that the document is ambiguous)). Simply put, courts will not search for ambiguity when a contract is clear, and the absence of a definition of an operative term in a contract does not make it ambiguous. *Colony Ins. Co. v. Coastal Constr. Mgmt., LLC*, No. 22-14037, 2024 WL 861254, at *2 (11th Cir. Feb. 29, 2024). For these same reasons, any expert testimony on the meaning of cash is inadmissible because the plain meaning controls.

The Foundation's prudent-investor argument also fails because, here, the Trust and Will expressly waived the prudent-investor standard in favor of a substantially lower "good-faith" standard. Specifically, Article 21.1 of the Trust authorized the trustee to hold funds:

> uninvested for such periods as the Trustee deems prudent, and to invest in any assets the Trustee deems advisable even though they are not technically recognized or specifically listed in so-called 'legal lists,' without responsibility for depreciation or loss on account of those investments, or because those investments are non productive, as long as the Trustee acts in good faith.

Article 8.1 of the Will contained an identical authorization for the Personal Representative. There is no evidence of bad faith on the part of either Defendant in the record.

In sum, the Foundation sets forth a litany of facts which it claims show Defendants breached their fiduciary duties. But to define the duty, the Foundation improperly relies on the default trustee fiduciary duties and prudent-investor rule in the Florida statutes. It is the governing documents that control, not the default duties, and the subject will and trust impose no duty to invest. Indeed, the subject documents immunize the Co-Trustees and the Personal Representative as long as they act in good faith. And, most important, the Foundation signed the Third Partial Distribution, Release, and Refunding Agreement on August 9, 2021 (the "Distribution Agreement") directing the Defendants to retain the remaining assets of the estate and trust "in cash" instead of investing them. The plain meaning of cash is cash, not a money market fund. So, Defendants are entitled to judgment as a matter of law on Plaintiff's claims.

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendants' Motions for Summary Judgment (Dkts. 71, 72) are granted.
2. Plaintiff's Motion for Summary Judgment (Dkt. 74) is denied.
3. The Clerk of Court is directed to enter Final Judgment in Defendants' favor and against Plaintiff.

4. The Clerk of Court is further directed to close this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida, this October 31, 2026.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record